UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Robert E. Blackburn

Civil Action No. 09-cv-02079-REB

JAN E. MASSE,

    Plaintiff,

v.

MICHAEL J. ASTRUE, Commissioner of Social Security,

    Defendant.

# ORDER REVERSING DISABILITY DECISION AND REMANDING TO COMMISSIONER

**Blackburn, J.**

The matter before me is plaintiff's **Complaint** [#1], filed August 31, 2009, seeking review of the Commissioner's decision partially denying plaintiff's claim for disability insurance benefits under Titles II of the Social Security Act, 42 U.S.C. § 401, *et seq.* I have jurisdiction to review the Commissioner's final decision under 42 U.S.C. § 405(g). The matter has been fully briefed, obviating the need for oral argument. I reverse and remand.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff alleges that she is disabled as a result of rheumatoid arthritis and degenerative disc disease, among other impairments. After her application for disability insurance benefits was denied, plaintiff requested a hearing before an administrative law judge. This hearing was held on September 25, 2008. At the time of the hearing, plaintiff was 48 years old. She has a college degree and past relevant work experience

as a college professor. She has not engaged in substantial gainful activity since April 29, 2005, her alleged date of onset.

The ALJ found that plaintiff was not disabled and therefore not entitled to disability insurance benefits. Although the medical evidence established that plaintiff suffered from severe impairments, the judge concluded that the severity of those impairments did not meet or equal any impairment listed in the social security regulations. Other alleged impairments were found to have been not severe prior to plaintiff's date last insured. The ALJ found that plaintiff had the residual functional capacity to perform a full range of sedentary work. Although this finding precluded plaintiff's past relevant work, the ALJ consulted the Medical-Vocational Guidelines (the "Grids"), 20 C.F.R. Pt. 404, Subpt. P, App. 2, and determined that given plaintiff's age, education, work experience, and residual functional capacity, she was not disabled.[1] He therefore found plaintiff not disabled at step five of the sequential evaluation. Plaintiff appealed this decision to the Appeals Council. The Council affirmed. Plaintiff then filed this action in federal court.

## II.  STANDARD OF REVIEW

A person is disabled within the meaning of the Social Security Act only if her physical and/or mental impairments preclude her from performing both her previous work and any other "substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2). "When a claimant has one or more severe impairments the Social

---

[1] The Grids are tables that direct a determination of "disabled" or "not disabled" based on intersecting considerations of a claimant's age, work experience, education, and residual functional capacity. **See Thompson v. Sullivan**, 987 F.2d 1482, 1487 (10th Cir. 1993).

Security [Act] requires the [Commissioner] to consider the combined effects of the impairments in making a disability determination." **Campbell v. Bowen**, 822 F.2d 1518, 1521 (10th Cir. 1987) (citing 42 U.S.C. § 423(d)(2)(C)). However, the mere existence of a severe impairment or combination of impairments does not require a finding that an individual is disabled within the meaning of the Social Security Act. To be disabling, the claimant's condition must be so functionally limiting as to preclude any substantial gainful activity for at least twelve consecutive months. **See Kelley v. Chater,** 62 F.3d 335, 338 (10th Cir. 1995).

The Commissioner has established a five-step sequential evaluation process for determining whether a claimant is disabled:

1. The ALJ must first ascertain whether the claimant is engaged in substantial gainful activity. A claimant who is working is not disabled regardless of the medical findings.

2. The ALJ must then determine whether the claimed impairment is "severe." A "severe impairment" must significantly limit the claimant's physical or mental ability to do basic work activities.

3. The ALJ must then determine if the impairment meets or equals in severity certain impairments described in Appendix 1 of the regulations.

4. If the claimant's impairment does not meet or equal a listed impairment, the ALJ must determine whether the claimant can perform his past work despite any limitations.

5. If the claimant does not have the residual functional capacity to perform her past work, the ALJ must decide whether the claimant can perform any other gainful and substantial work in the economy. This determination is made on the basis of the claimant's age, education, work experience, and residual functional capacity.

20 C.F.R. § 404.1520(b)-(f). ***See also Williams v. Bowen*** 844 F.2d 748, 750-52 (10th Cir. 1988). The claimant has the initial burden of establishing a disability in the first four steps of this analysis. ***Bowen v. Yuckert***, 482 U.S. 137, 146 n.5, 107 S.Ct. 2287, 2294 n.5, 96 L.Ed.2d 119 (1987). The burden then shifts to the Commissioner to show that the claimant is capable of performing work in the national economy. ***Id.*** A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. ***Casias v. Secretary of Health & Human Services***, 933 F.2d 799, 801 (10th Cir. 1991).

Review of the Commissioner's disability decision is limited to determining whether the ALJ applied the correct legal standard and whether the decision is supported by substantial evidence. ***Hamilton v. Secretary of Health and Human Services***, 961 F.2d 1495, 1497-98 (10th Cir. 1992); ***Brown v. Sullivan***, 912 F.2d 1194, 1196 (10th Cir. 1990). Substantial evidence is evidence a reasonable mind would accept as adequate to support a conclusion. ***Brown***, 912 F.2d at 1196. It requires more than a scintilla but less than a preponderance of the evidence. ***Hedstrom v. Sullivan***, 783 F.Supp. 553, 556 (D. Colo. 1992). "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." ***Musgrave v. Sullivan***, 966 F.2d 1371, 1374 (10th Cir. 1992). Further, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence." ***Thompson v. Sullivan***, 987 F.2d 1482, 1487 (10th Cir. 1993). Although a reviewing court should meticulously examine the record, it may not reweigh the evidence or substitute its discretion for that of the Commissioner. ***Id.***

4

## III. LEGAL ANALYSIS

Plaintiff maintains that the ALJ erred by failing to assign appropriate weight to the opinions of her treating physicians, as well as in discrediting her own subjective reports regarding her functional limitations. Because I agree on the first count, I do not consider the second, which nevertheless may be reassessed on remand in light of a proper consideration of the treating source opinions.

The record contains disability opinions from three treating sources: Dr. Stewart Kassan, a rheumatologist; Dr. Donald Cooke, an immunopathologist; and Dr. Jim Youssef, an orthopedic surgeon. Each source completed a two-page "Physical Capacities Evaluation" form assessing plaintiff's work abilities.[2] While each imposed slightly different functional restrictions, considered collectively, these opinions essentially limit plaintiff to sedentary or light work with significant manipulative, postural, and environmental restrictions. (Tr. 441-442, 468-469, 593-594.)[3] The ALJ, however, included none of these restrictions in his residual functional capacity determination, concluding instead that plaintiff was capable of a full range of sedentary work. In so doing, he expressly afforded Dr. Kassan's and Dr. Cooke's opinions minimal weight on

---

[2] The Commissioner argues that these forms can be disregarded because they are merely "check-off forms." The law in this circuit is to the contrary, especially when treating source opinions are at issue. *Andersen v. Astrue*, 2009 WL 886237 at *6-7 (10th Cir. Apr. 3, 2009) (discussing treating source opinions on Med-9 forms); *Angster v. Astrue*, 703 F.Supp.2d 1219, 1228 n.2 (D. Colo. 2010) (same).

[3] Dr. Kassan opined that plaintiff could sit for no more than two hours a day, stand and walk for no more than two hours a day, and occasionally lift up to 20 pounds, never use her hands or feet, and had pain that would so inhibit her concentration and attention for even simple, unskilled work tasks. (Tr. 468-469.) Dr. Cooke stated that plaintiff could sit for four hours a day, stand and walk for one, occasionally life up to five pounds, never use her hands or feet, and that her pain was moderate and thus would preclude skilled work. (Tr. 441-442.) Dr. Youssef believed plaintiff could sit for no more than two hours a day, stand and walk for no more than two hours a day, and occasionally lift up to 10 pounds, could use her hands for simple grasping and fine manipulation but not pushing or pulling, could operate foot controls, and experienced moderate pain precluding skilled work. (Tr. 593-594.)

the grounds that those opinions were inconsistent with the physicians' own treating notes and were rendered several months after plaintiff's date last insured, which was December 31, 2006. (Tr. 24.) He did not discuss Dr. Youssef's residual functional capacity opinion at all.

The opinion of a treating source is entitled to controlling weight when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the case record" and cannot be rejected absent good cause for specific and legitimate reasons clearly articulated in the hearing decision. 20 C.F.R. § 404.1527(d)(2); *see also Watkins v. Barnhart*, 350 F.3d 1297, 1301 (10th Cir. 2003). Good cause may be found when a treating source opinion is brief, conclusory, or unsupported by the medical evidence. *Frey v. Bowen*, 816 F.2d 508, 513 (10th Cir. 1987). Nevertheless, even if a treating source opinion is not accepted, "[t]he RFC assessment must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." **Social Security Ruling 96-8p**, 1996 WL 374184 at *7 (SSA July 2, 1996). I cannot find such good cause in the ALJ's reasons for rejecting the opinions he did mention, much less in the one he ignored entirely.

The primary reason given by the ALJ for rejecting Dr. Kassan's and Dr. Cooke's opinions was their alleged inconsistency with the treatment records. This rationale does not withstand scrutiny. The ALJ read Dr. Kassan's treatment notes to suggest that, prior to her date last insured, plaintiff "had complaints of only occasional stiffness and

6

was noted, at most, to have 1+ synovitis in her hands, with no indication of significant difficulties grasping or with fine manipulation." (Tr. 23.) It is not at all clear how the ALJ translated the medical findings of record into "occasional stiffness." Indeed, in July, 2006, Dr. Kassan noted that plaintiff had "increased RA activity" as a result of attempts to decrease her then-current medication. (Tr. 474.)[4] In September, he indicated an apparent desire to try more aggressive therapies after plaintiff's immunopathologic issues were resolved (*see* Tr. 475), and indeed, prescribed a different medication the following month (*see* Tr. 476). Moreover, in anticipation of her back surgery in December, 2006, plaintiff was required to discontinue some of her arthritis medications, which, Dr. Kassan noted shortly after her date last insured, had increased her symptomology. (Tr. 477.)[5]

In addition, the ALJ did not explain how, nor is he qualified to determine whether, a finding of "1+ synovitis"[6] is equivalent to minimal inflammation or is otherwise inconsistent with the limitations Dr. Kassan imposed. The ALJ is not a medical expert and cannot substitute his own opinion for that of a qualified medical expert. *Hamlin v. Barnhart*, 365 F.3d 1208, 1221 (10th Cir. 2004); *see also McGoffin v. Barnhart*, 288

---

[4] The Commissioner's suggestion that plaintiff's rheumatoid arthritis was well-controlled on medication finds little support in the record. Indeed, Dr. Kassan noted a lengthy list of past medications that had been tried without success. (Tr. 476.)

[5] The ALJ also noted that plaintiff did not see Dr. Kassan from October 31, 2006, until June 4, 2007. (Tr. 22.) Given that she was off her rheumatoid arthritis medications in anticipation of surgery and it is not clear when, or indeed whether, they were resumed thereafter, this fact does not seem unusual or indicative of an abatement of her condition.

[6] "Synovitis indicates inflammation in the lining of the joint, or synovium. Synovitis is characterized on physical examination by swelling, redness, and warmth." Carol & Richard Eustice, *What is Synovitis and Subclinical Synovitis?*, About.com Guide (Dec. 17, 2009), available at: http://arthritis.about.com/od/arthritissignssymptoms/f/synovitis.htm (last accessed September 28, 2010).

7

F.3d 1248, 1252 (10th Cir. 2002) (ALJ may reject physician opinion "only on the basis of contradictory medical evidence and not due to his or her own credibility judgments, speculation or lay opinion") (citation and internal quotations marks omitted). Nor is there any reason to believe that Dr. Kassan normally would have mentioned whether plaintiff could perform grasping or fine manipulation with her hands in his treatment notes. Indeed, Dr. Kassan's findings that plaintiff "has fairly significant RA over her hands, wrists, knees, ankles, feet, and hips which is poorly responsive to antirheumatic drugs" can hardly be squared with the ALJ's benign interpretation. Instead, it smacks of improper "cherry-picking" of the record. *See Robinson v. Barnhart*, 366 F.3d 1078, 1083 (10th Cir. 2004).

The ALJ did not specify in what way Dr. Cooke's assessment of plaintiff's functional abilities and limitations was inconsistent with his treatment notes or the other medical evidence of record. This failure makes it impossible for this court to determine whether the ALJ properly assigned minimal weight to this opinion. "The decision must articulate the ALJ's reasoning such that later reviewers can identify both the weight that was actually assigned to the [medical source] opinion and the reasons for that weight." *Andersen v. Astrue*, 2009 WL 886237 at *3 (10th Cir. Apr. 3, 2009) (citations omitted); *see also* **Social Security Ruling 96-2p**, 1996 WL 374188 at *5 (SSA July 2, 1996). The ALJ's bare conclusion is not an adequate substitute for actual findings, and does not constitute substantial evidence.[7] *See Hardman v. Barnhart*, 362 F.3d 676, 679

---

[7] Although the Commissioner asks me to accept the ALJ's suggestion that he considered the entire record at face value, that incantation is sufficient only when the record provides no reason to question its validity. *Cox v. Apfel*, 2000 WL 1472729 at *8 (D. Kan. Feb. 24, 2000) (citing *Hamilton v. Secretary of Health & Human Services*, 961 F.2d 1495, 1498-99 (10th Cir.1992)).

(10th Cir. 2004).

Conversely, although the ALJ recounted the treatment records from Dr. Youssef, he failed to even mention the doctor's functional assessment. Contrary to the Commissioner's suggestion, this omission was not harmless. Although the opinion was dated in May, 2008, nearly two-and-a-half years after plaintiff's date last insured (*see* Tr. 594), Dr. Youssef treated plaintiff during the entire period of her alleged disability, and thus has contemporaneous records and knowledge of plaintiff's condition during the relevant time period.[8] There is nothing on the face of this report to suggest that Dr. Youssef was unaware that plaintiff was requesting his opinion in connection with her claim for benefits or that he intended to render an opinion only of her then-current limitations.[9] Given this ambiguity, it would have been imperative on the ALJ to recontact Dr. Youssef for further clarification on these matters before determining what weight to give his opinions. *See* 20 C.F.R. § 404.1512(e); **Social Security Ruling 96-5p**, 1996 WL 374183 at \*6 (SSA July 2, 1996).

Likewise, the ALJ's reliance on the distance between the dates of Dr. Kassan's and Dr. Cooke's functional assessments and plaintiff's date last insured provides no

---

[8] The ALJ did note that plaintiff first sought treatment for her back pain eight months after her alleged onset date (Tr. 23), but this recognition in itself was not sufficient to justify ignoring Dr. Youssef's findings wholesale, and appears to be related to the ALJ's mistaken assumption that plaintiff was required to prove that her disability was encompassed totally during a 12-month period prior to expiration of her insured status, discussed more fully below. Moreover, even though plaintiff appeared to have good results from surgery (Tr. 241), she required at least two more sacroiliac joint injections and a nerve root block in the six months following (Tr. 458-459), suggesting the surgery was not as entirely successful as the ALJ's recitation of the evidence makes out. *See Hamlin*, 365 F.3d at 1215 (evidence outside period may be considered to extent it sheds light on disability during relevant time).

[9] Indeed, it appears to this court that the form – which is not a standard agency form and is identical for each of plaintiff's three treating sources – likely was submitted to the physicians by plaintiff or her representative in connection with plaintiff's claim for benefits.

clear justification for assigning those opinions less weight. Although a retrospective *diagnosis* can provide no basis for a finding of disability absent evidence of an actual impairment prior to the date last insured, **Flint v. Sullivan**, 951 F.2d 264, 267 (10th Cir. 1991), these opinions are not mere diagnoses but actual statements of plaintiff's work-related abilities. Moreover, the fact that both physicians had not seen plaintiff for several months at the time they rendered their opinions hardly seems damning in light of the fact that in both cases, both physicians' most recent examinations had occurred prior to plaintiff's date last insured. **See Hamlin**, 365 F.3d at 1215 (evidence prior to onset date of disability or after date last insured may be considered to extent it sheds light on disability during relevant time period). Thus, both opinions might be thought to give perspective on plaintiff's condition during the relevant time frame.

In addition, there appears to be no other evidentiary basis for the ALJ's conclusion that plaintiff was capable of performing a full range of sedentary work. Assuming *arguendo* that the ALJ properly rejected the various postural and environmental limitations suggested by the treating source opinions, his conclusion regarding plaintiff's residual functional capacity nevertheless must be based on the medical evidence. **See McGoffin**, 288 F.3d at 1252. The record in this case contained no contrary medical opinion to support a finding that the full range of sedentary work was available to plaintiff.[10] The ALJ has duty to fully develop the record, **Carter v. Chater**, 73 F.3d 1019, 1021 (10th Cir. 1996), as part of which he could have ordered a

---

[10] The only other opinion of record was that of a "Single Decision Maker," whose opinion the ALJ properly recognized as being entitled to no weight whatsoever. (Tr. 23, 428-435.) **See Goupil v. Barnhart**, 2003 WL 22466164 at * 2 n.3 (D. Me. Oct. 31, 2003).

consultative examination to make up for this apparent gap in the record, *see* 20 C.F.R. §§ 404.1512(f), 1517, & 1519, or solicited the testimony of a medical expert at the hearing, *see id.*, § 404.1527(f)(2)(iii). He could not, however, simply craft functional limitations from whole cloth.

Moreover, it appears the ALJ was under the impression that plaintiff was required to prove "a complete inability to engage in substantial gainful activity for a period or 12 continuous months *prior* to December 31, 2006." (Tr. 23 (emphasis added).) This is not an accurate statement of the law. Rather, disability is established if the impairment results in an inability to engage in substantial gainful activity that can be *expected* to last for twelve months. 42 U.S.C. § 423(d)(1). So long as that period commences prior to the date last insured, there is no requirement that the entire 12-month period predate the date last insured. ***See McQuestion v. Astrue***, 629 F.Supp.2d 887, 901-903 (E.D. Wis. 2009) (citing cases); *see also* **Social Security Ruling 83-20**, 1983 WL 31249 at *1 (SSA 1983) ("Although important to the establishment of a period of disability and to the payment of benefits, the expiration of insured status is not itself a consideration in determining when disability first began.").[11] Although this circumstance may argue for a date of onset later, and a period of disability concomitantly shorter, than that alleged by plaintiff in this case, it provides no reason for rejecting her claim outright. **See SSR 83-20**, 1983 WL 31249 at *3 ("In determining the date of onset of disability, the date alleged by the individual should be used if it is consistent with all the evidence available. When

---

[11] Indeed, this finding is implicitly inconsistent with the ALJ's step two determination that plaintiff's rheumatoid arthritis was severe. *See* 20 C.F.R. § 404.1520(a)(4)(ii) (noting that severe impairment is one that, *inter alia*, "meets the duration requirement in § 404.1509").

the medical or work evidence is not consistent with the allegation, additional development may be needed to reconcile the discrepancy.").[12]

In sum, I find that the ALJ failed to show good cause for rejecting the opinions of the treating physicians as to plaintiff's functional limitations. Had those opinions been given controlling weight, the ALJ could not have found that plaintiff had the capacity for a full range of sedentary work, and therefore could not have relied on the Grids, as was done here. ***Trimiar v. Sullivan***, 966 F.2d 1326, 1332-33 (10th Cir. 1992) (finding that claimant can perform less than full range of work in any category requires consideration of degree to which such limitations erode occupational base, requiring testimony of a vocational expert). The decision therefore must be reversed and the case remanded for further proceedings. Although plaintiff requests a directed award of benefits, I do not find that this case presents an appropriate occasion for the exercise of my discretion in that regard. ***See Nielson v. Sullivan***, 992 F.2d 1118, 1122 (10th Cir. 1993).[13]

**THEREFORE, IT IS ORDERED** as follows:

1. That the conclusion of the Commissioner through the Administrative Law Judge that plaintiff was not disabled is **REVERSED**;

2. That this case is **REMANDED** to the ALJ, who is directed to:

    a.    Reevaulate the opinions of plaintiff's treating sources, articulating legitimate reasons specifically tied to the evidence of record for the

---

[12] In which case, the ALJ may well have been required to consult a medical advisor. ***See Newell v. Commissioner of Social Security***, 347, F.3d 541, 548-49 (3rd Cir. 2003) (citing cases).

[13] Accordingly, I do not intimate by this ruling that plaintiff is or should be found disabled prior to her date last insured.

relative weight afforded to each;

b. Recontact any treating source, seek the testimony of medical experts, order consultative examinations, solicit further vocational expert testimony, or otherwise further develop the record as he deems necessary;

c. Reassess plaintiff's credibility in light of his consideration of the evidence;

d. If necessary, redetermine at step five of the sequential evaluation process whether there are other jobs existing in significant numbers in the local and national economies that plaintiff can perform within her residual functional capacity; and

e. Reassess the disability determination; and

3. That plaintiff is **AWARDED** her costs, to be taxed by the Clerk of the Court pursuant to Fed.R.Civ.P. 54(d)(1) and D.C.COLO.LCivR 54.1 and 28 U.S.C. § 2412(a)(1).

Dated September 28, 2010, at Denver, Colorado.

**BY THE COURT:**

Bob Blackburn
Robert E. Blackburn
United States District Judge